UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| JOSEPH D. CANCINO, | § | |
| | § | |
| Petitioner, | § | |
| VS. | § | CIVIL ACTION NO. 2:21-CV-49 |
| | § | |
| BRIAN COLLIER, *et al*, | § | |
| | § | |
| Respondents. | § | |

## MEMORANDUM AND RECOMMENDATION

Petitioner, who is represented by counsel, is a state prisoner incarcerated at the Wynne Unit in Huntsville, TX. (D.E. 1). He filed this habeas corpus petition pursuant to 28 U.S.C. § 2254, challenging his 2017 Nueces County convictions for murder and aggravated assault with a deadly weapon. (D.E. 1, Page 1). Pending is Respondent's Motion for Summary Judgment filed on July 16, 2021 to which Petitioner responded on August 5, 2021. (D.E. 23 and D.E. 24). For the reasons stated below, it is respectfully **RECOMMENDED** the Court **GRANT** Respondent's Motion for Summary Judgment (D.E. 23) and **DISMISS** this action. The undersigned further **RECOMMENDS** the Court **DENY** a Certificate of Appealability.

**I.      JURISDICTION**

The Court has jurisdiction over the subject matter and the parties pursuant to 28 U.S.C. §§ 2241 and 2254. A habeas action may be filed either in the district where petitioner is in custody or in the district in which petitioner was convicted. 28 U.S.C. §

2241(d); *Wadsworth v. Johnson*, 235 F.3d 959, 961 (5th Cir. 2000). Jurisdiction and venue are proper in this Court because Petitioner was convicted within the Corpus Christi Division of the Southern District of Texas. *Id.*; 28 U.S.C. § 124(b)(6). This case was referred to the undersigned pursuant to 28 U.S.C. § 636.

## II. BACKGROUND

On May 9, 2017, after being found guilty of murder and aggravated assault by a jury, Petitioner was sentenced to 48 years and five years' imprisonment, respectively, sentences to run concurrently. (D.E. 22-44, Pages 7-9).

Petitioner appealed this conviction, which was affirmed by the Thirteenth District Court of Appeals on May 9, 2019. *Cancino v. State*, No. 13-17-417-CR (Tex. App. — Corpus Christi-Edinburg 2019); (D.E. 22-1). Petitioner's Motions for Reconsideration and Rehearing were denied on June 26, 2019. (D.E. 22-5 and D.E. 22-6). Petitioner did not file a petition for discretionary review ("PDR") with the Texas Court of Criminal Appeals. (D.E. 1, Page 2). Petitioner filed a state habeas petition on or about June 23, 2020 which was denied without written order on February 24, 2021. (D.E. 1, Page 3; D.E. 22-43 and D.E. 22-44). Petitioner then filed this federal habeas action on March 24, 2021. (D.E. 1).

## III. APPLICABLE LEGAL STANDARDS

### A. Summary Judgment

In deciding a motion for summary judgment, the district court must determine whether the pleadings, discovery materials, and the summary judgment evidence show there is no genuine issue as to any material fact and that the moving party is entitled to

judgment as a matter of law. Fed. R. Civ. P. 56. Once the movant presents a properly supported motion for summary judgment, the burden shifts to the non-movant to show with significant probative evidence the existence of a genuine issue of material fact. *Hamilton v. Segue Software, Inc.,* 232 F.3d 473, 477 (5th Cir. 2000).

Generally, Rule 56 of the Federal Rules of Civil Procedure, which governs summary judgment procedure, applies with equal force to federal habeas corpus cases. *Clark v. Johnson*, 202 F.3d 760, 764-65 (5th Cir. 2000) (citations omitted); *see also* Fed. R. Civ. P. 81(a)(4) ("These rules apply to proceedings for habeas corpus…"). However, Rule 56 applies only to the extent that it does not conflict with the federal rules governing habeas proceedings. *Smith v. Cockrell,* 311 F.3d 661, 668 (5th Cir. 2002), *overruled on other grounds by Tennard v. Dretke,* 542 U.S. 274 (2004). Accordingly, § 2254(e)(1), mandating that a state court's findings are presumed to be correct, overrides the summary judgment rule that all disputed facts must be construed in the light most favorable to the non-movant. *Smith*, 311 F.3d at 668. Unless a petitioner can rebut the presumption of correctness of a state court's factual findings by clear and convincing evidence, such findings must be accepted as correct by the federal habeas court. § 2254(e)(1); *Id.*

**B. Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") 28 U.S.C. §2254**

Federal habeas corpus petitions are governed by the AEDPA. Relief shall not extend to a prisoner unless he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3) & § 2254(a); *Brecht v. Abrahamson*, 507 U.S. 619, 633-34 (1993). Under AEDPA, a state prisoner may not

obtain relief with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim:

(a) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(b) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d).

Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by the U.S. Supreme Court on a question of law or if the state court decides a case differently than the Court on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Court's decisions but unreasonably applies the principle to the facts of the prisoner's case. *Williams v. Taylor*, 529 U.S. 362, 412-413 (2000). Although "unreasonable" is difficult to define, the Court noted it is an objective, rather than subjective, standard and emphasized that there is a critical difference between an unreasonable application of federal law and a merely "incorrect" or "erroneous" application of federal law. *Neal v. Puckett*, 239 F.3d 683, 687 (5th Cir. 2001) (citing *Williams*, U.S. 362 at 412-13).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fair minded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v.*

*Alvarado*, 541 U.S. 652, 664 (2004)). A federal habeas court must determine what theories or arguments supported, or could have supported, that state court's decision. If a decision by a state court is silent as to the reasons for the denial, a federal habeas court can "look through" the decision and evaluate the last reasoned state court decision. *Bledsue v. Johnson*, 188 F.3d 250, 256 (5th Cir. 1999).[1] Then, the federal habeas court must ask whether it is possible that fair minded jurists could disagree that the arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court. *Richter*, 562 U.S. at 101-02. Even a strong case for relief does not mean the state court's contrary conclusion was unreasonable. *Id*. (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)).

This standard is very difficult to meet. "As amended by AEDPA, § 2254(d) stops short of the imposing a complete bar on federal court litigation of claims already rejected in state proceedings…It preserves authority to issue the writ in cases where there is no possibility fair minded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no further." *Richter*, 562 U.S. at 102. "[A] state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair minded disagreement." *Id*. at 103.

A state court's factual findings are presumed to be correct and a petitioner has the burden of rebutting the presumption with clear and convincing evidence. *Garcia v.*

---

[1] The Texas Court of Criminal Appeals ("TCCA") has explained a "denial" signifies the Court addressed and rejected the merits of a particular claim while a "dismissal" means the Court has declined to consider the claim for reasons unrelated to the claim's merits. *Bledsue*, 188 F.3d at 257 (citing *Ex parte Thomas,* 953 S.W.2d 286, 289 (Tex. Crim. App. 1997)).

*Quarterman*, 454 F.3d 441, 444 (5th Cir. 2006).  This deference extends not only to express findings of fact, but to the implicit findings of the state court.  *Id*.  In addition, "[w]here a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief."  *Richter*, 562 U.S. at 784.

## IV.   CASE SUMMARY[2] AND PETITIONER'S ALLEGATIONS OF ERROR

On July 10, 2016, Petitioner was playing pool with his half-brother Roman Cancino, Jr. and Roman's wife at the Office Club bar in Corpus Christi, Texas.  Also at the bar were Roddy Rodriguez and Loreto "Larry" Gonzalez, both known associates of the Texas Syndicate street gang.  Petitioner was also a member or former member of the Texas Syndicate.  At some point in the evening, Rodriguez and Petitioner physically bumped into one another and the two argued.  Later, as Rodriguez left the bar with Samantha Trejo and Gonzalez, Petitioner fatally shot Rodriguez in the head and chest outside of the view of surveillance cameras.  Gonzalez returned fire as he ran to his car in the parking lot and received minor injuries.  At trial, Petitioner asserted his actions were not intentional and he was acting in self-defense.  The jury was charged on the indicted offenses and was instructed on the justification of self-defense, including the exception to that justification for provocation.  The jury found Petitioner guilty as charged and sentenced him to 48-years' incarceration for murder and five years for aggravated assault, sentences to run concurrently.

---

[2] A summary of the case is contained in the Memorandum Opinion of the Thirteenth Court of Appeals and therefore, need not be repeated here. (D.E. 22-1, Pages 2-12).

In the Memorandum Opinion affirming his convictions, the Thirteenth District Court of Appeals found:

> [Petitioner] argues that the jury's rejection of his self-defense theory is "blatantly contradicted" by the extensive surveillance video evidence that was adduced at trial…
>
> Petitioner urges us to view the facts "in the light depicted by the videotape"…to conclude that no rational juror could have found against his self-defense theory after viewing the surveillance videos. He specifically notes that, although DeLeon initially testified that [Petitioner] "pushe[d] his friend over" before firing, DeLeon could not identify that "friend" when the recordings were played for him at trial. He contends that the video evidence "clearly" shows that "Rodriguez's intentions were to confront and kill [Petitioner] that night with the help of his associates," and that [Petitioner] "feared for his life, sought to leave the club peacefully, and was pursued by Rodriguez and his associates who were the aggressors."
>
> We have viewed the video recordings entered into evidence in this case, and we cannot agree with [Petitioner] that they discredit or contradict the testimony upon which the jury based its verdict. The recording establishes that [Petitioner] and Rodriguez exchanged words outside the bar's bathroom; that Rodriguez made hand gestures to [Petitioner] on multiple occasions following the bathroom confrontation; and that the shootout happened as Rodriguez and his associates were leaving the bar after he paid his tab. However, the surveillance videos do not depict the area surrounding the entrance of the bar, and therefore, they do not show [Petitioner] or Rodriguez at or around the time the fatal shots were fired. Therefore, there is no basis for us to disturb the jury's implicit decisions (1) to disbelieve [Petitioner's] testimony that Rodriguez reached for his waistband and brandished a gun immediately prior to the shooting, and (2) to believe the other witnesses who testified that Rodriguez was not armed, did not reach for his waistband, and did not threaten [Petitioner] with unlawful force…
>
> The videos in evidence here, though useful for background purposes, do not depict the specific events upon which the indicted offenses and [Petitioner's] self-defense theory were based. Therefore, they had no potential to "utterly discredit" the testimony of the other witnesses— including DeLeon, Herrera, Henderson, Solis, Paiz, and Trejo—specifically regarding those events…

> In any event, direct evidence of [Petitioner's] culpability was adduced in this case, including the eyewitness testimony of DeLeon that [Petitioner] shot Rodriguez and the testimony of multiple witnesses that Rodriguez did not reach for his waistband or pull a weapon…
>
> Viewing all of the evidence in the light most favorable to the verdict, we conclude a rational trier of fact could have found the essential elements of the charged offenses, and against [Petitioner] on his self-defense issue, beyond a reasonable doubt. [Petitioner] testified to facts that, if believed, may have supported his assertion that his actions were immediately necessary to protect himself against Rodriguez's attempted use of unlawful force. However, other witnesses testified to facts which, if believed, controvert that assertion. Under these circumstances, where the video evidence is inconclusive regarding the ultimate issues before the jury, we must refer to the jury's resolution of evidentiary conflict.

(D.E. 22-1, Pages 14-18).

In his amended petition and his final memorandum in support, Petitioner asserts he is actually innocent. (D.E. 11 and D.E. 17). More specifically, Petitioner asserts: (1) The jury was precluded because of his ineffective trial counsel from viewing the available surveillance footage in full which he alleges would show he was acting in self-defense; (2) The testimony of Cody Jo McDaniels and Alex Sandoval supports that Petitioner acted in self-defense; and (3) The testimony of two previously unknown witnesses, Sebastian Mejia and Justin Cantu,[3] would also support his assertion that he acted in self-defense and his trial counsel was ineffective for failing to identify and call these witnesses. (D.E. 11 and D.E. 17). Petitioner asserts this witness testimony and the video evidence would have led to a different verdict. Petitioner also requests a hearing before

---

[3] In his Amended Petition, Petitioner refers to this alleged witness as Joseph Cantu. (D.E. 11, Page 8). However, it is clear from both the final Memorandum in Support and the affidavit from Mr. Cantu attached to the Response that his correct first name is Justin. (D.E. 17, Page 48 and D.E. 17-4).

this Court.[4]

The undersigned recommends each of these arguments is without merit, as discussed below.

## V. DISCUSSION

### A. Actual Innocence

Respondent asserts Petitioner's claims of actual innocence are not cognizable on federal habeas review. For the reasons stated below, the undersigned agrees.

A freestanding claim of actual innocence, including an actual innocence claim based on newly discovered evidence, does not provide a basis for federal habeas relief absent evidence of an independent constitutional violation in the state criminal proceeding. *Herrera v. Collins*, 506 U.S. 390, 400 (1993) (Federal habeas courts do not relitigate state trials). Further, the Fifth Circuit has held that in Texas, the availability of a state procedure to review actual innocence claims defeats a freestanding innocence claim made in federal habeas action. *Coleman v. Thaler*, 716 F.3d 895, 908 (5th Cir. 2013) (citations omitted). Here, Petitioner raised all his actual innocence claims during state post-conviction proceedings where they were rejected on the merits. (D.E. 22-43 and D.E. 22-44, Pages 16-22). Accordingly, Petitioner has not demonstrated there was an independent constitutional violation and therefore, his claims of actual innocence fail to state a ground for federal habeas relief. *Lucas v. Johnson*, 132 F.3d 1069, 1075-76 (5th Cir. 1998).

---

[4]In his original petition, Petitioner raised an additional argument that the state habeas court did not afford him an adequate review of his claims because it did not conduct a hearing. (D.E. 1, Page 10). However, Petitioner did not assert this ground for relief in his amended petition and therefore, the undersigned declines to consider it. (D.E. 11).

Recognizing this failure, Petitioner argues in his Response that he is instead bringing an ineffective assistance of counsel claim, citing the Supreme Court decision in *Schlup v. Delo*, 513 U.S. 298 (1995); (D.E. 24).  In *Schlup*, the Supreme Court distinguished a freestanding, substantive actual innocence claim where a petitioner asserts innocence entitles him to federal habeas relief from a procedural innocence claim where a petitioner seeks to have an "otherwise barred constitutional claim considered on the merits." *Id*. at 315 (Distinguishing a constitutional claim based on actual innocence as in *Herrera* from a claim of actual innocence that can, in a "narrow class of cases," excuse procedural default or untimeliness).  However, the distinction made in *Schlup* makes it clear Petitioner's claims are substantive, not procedural, as Petitioner is not using his actual innocence claims to obtain review of any ineffective assistance of counsel claim that is procedurally barred.  There is no reason why this would be necessary as Petitioner could have raised a free-standing ineffective assistance of counsel claim for consideration on the merits.  *Coleman*, 716 F.3d at 908.  Reviewing the amended petition and memorandum in support, it is clear Petitioner is requesting this Court review his actual innocence claims themselves on the merits and reweigh the evidence presented to the jury, not review counsel's alleged ineffective assistance.

Further, Petitioner makes nearly identical allegations to those raised in his state habeas application, which was denied by the TCCA on the merits.  He makes no substantive argument that the state court proceedings resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States or that the decision was based on

10 / 20

an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Petitioner fails to meet his burden under AEDPA that there was no reasonable basis for the state court to deny relief. *Richter*, 526 U.S. at 98 ("Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief.") Therefore, the undersigned recommends these claims be dismissed.

### B.      Ineffective Assistance of Counsel

Additionally, even if the Court were to consider the merits of Petitioner's actual innocence claims coupled with his alleged ineffective assistance of counsel allegations, the undersigned recommends they would fail.

#### 1.      Standard

The Sixth Amendment guarantees a criminal defendant the effective assistance of counsel. To prevail on an ineffective assistance of counsel claim, a petitioner must meet the two-prong test set out in *Strickland v. Washington*. 466 U.S. 668 (1984). Petitioner must show counsel's performance fell below an objective standard of reasonableness and that deficient performance prejudiced the defense. *Id.* at 687-88. To be cognizable under *Strickland*, trial counsel's error must be "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. Petitioner must prove he was prejudiced by his attorney's substandard performance, which "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* Petitioner then "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different." *Id*. at 694. "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112 (citation omitted).

Judicial scrutiny of counsel's performance must be highly deferential and a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689. A petitioner "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance, while recognizing that "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. A court must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence." *Id.* at 689. The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms." *Id*. at 690.

An ineffective assistance of counsel claim raised in a habeas petition must therefore be analyzed under both the *Strickland* and § 2254(d) standards. As these standards are both highly deferential, when the two apply in tandem, judicial review is "doubly" so. *Richter*, 562 U.S. at 105 (citations omitted). The federal habeas court asks not whether defense counsel's performance fell below *Strickland*'s standard, but whether the state court's application of the *Strickland* standard was unreasonable. *Id*. at 101.

"Under AEDPA…it is a necessary premise that the two questions are different." *Id.* Because the *Strickland* standard is a general one, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard. *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (citing *Yarborough*, 541 U.S. at 664). Thus, where § 2254(d) applies to a *Strickland* claim, habeas relief is appropriate only when the petitioner shows there is no reasonable argument that counsel's performance satisfied *Strickland*'s deferential standard. *McCoskey v. Thaler*, 478 F. App'x 143, 152 (5th Cir. 2012).

### 2. Analysis

Petitioner first asserts the video evidence when viewed in full, chronologically from all camera angles at once shows Rodriguez noticing Petitioner attempting to leave the bar and rushing Petitioner at the doorway, starting "a fight that ended in the shooting of [Rodriguez] with his own gun." (D.E. 17, Pages 41-44). However, there is no dispute that the fatal shooting took place at the entrance, outside the views of the surveillance cameras. Therefore, the video surveillance does not discredit the testimony of multiple witnesses, including Chelaine Henderson, Thomas Soliz, Rey Herrera, Celeste Paiz and Jason DeLeon, who testified they did not see Rodriguez with a weapon prior to his being shot or rushing at Petitioner. (D.E. 22-29, Pages 110-116, 167-168 and 182-187, 195 and 198; D.E. 22-30, Pages 38-42, 129-132 and 136-137; D.E. 22-31, Pages 111-119). Further, DeLeon testified that after Rodriguez paid his tab, Petitioner and those he had been playing pool with, rushed at Rodriguez, they argued, Rodriguez began walking out and then turned back around pointing his finger at Petitioner's group and then Petitioner

pushed his friend over and fired at Rodriguez. (D.E. 22-31, Pages 111-114 and 162-166). DeLeon further testified Rodriguez, who he did not know, was opening the door with his right hand, did not have anything in his left hand, did not motion toward his waistband or pockets and when he turned back around and was gesturing with his right hand at Petitioner's group, "the gun was already pointed at him." (D.E. 22-31, Pages 114-116, 119, 124, 150 and 163). DeLeon also testified Petitioner was less than five feet away from Rodriguez when Petitioner fired and that immediately after Petitioner's group ran out, he checked on Rodriguez, saw the bullet hole in his head and called 911. (D.E. 22-31, Pages 116-117 and 120-121). On cross examination, DeLeon testified that Petitioner "ran up to [Rodriguez] while firing. He walked up to the door as [Rordriguez] was walking out." (D.E. 22-31, Page 133 and 163-166).

In short, there is no video evidence of the shooting itself but there is a significant amount of eyewitness testimony that Petitioner shot Rodriguez, who did not reach for his waistband or have a weapon. Petitioner's trial counsel attempted to impeach these witnesses using both their statements to police and the video surveillance footage. In fact, the trial record is replete with references to the video surveillance footage and it is clear the jury reviewed it extensively and often repetitively during the testimony of multiple witnesses. Therefore, the undersigned recommends Petitioner's argument that his counsel was somehow ineffective or that the footage supports his claims of actual innocence if played chronologically is without merit. Petitioner fails to overcome the strong presumption of competence owed to his counsel's conduct. *Strickland*, 466 U.S. at 690; *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992) ("We must strongly

presume that trial counsel rendered adequate assistance and that the challenged conduct was the product of reasoned trial strategy.") (citation omitted).

Petitioner next asserts Cody Jo McDaniels, who testified she was intoxicated on the night in question, gave conflicting testimony at the trial, where she testified Rodriguez was calm on the night he was killed, and at the Motion for New Trial hearing, where she testified Rodriguez "intended to kill Petitioner that night." (D.E. 17, Pages 45-46).[5] Petitioner makes no allegations of ineffective assistance with this ground for relief, instead asserting no reasonable juror could have found him guilty in light of this "recanting" testimony. (D.E. 17, Page 45). However, the undersigned has reviewed McDaniels' testimony and finds no inherent conflict as alleged by Petitioner and further has failed to find anywhere in the record where McDaniels testified Rodriguez intended to kill Petitioner. (D.E. 22-30, Pages 16-35 and D.E. 22-39, Pages 158-172). At trial, McDaniels testified she knew Rodriguez for a few years from working at the bar but did not have a personal relationship with him. She testified he never caused any trouble but that on the night in question while they were speaking outside the bar, he told her he "had a beef with someone inside." (D.E. 22-30, Pages 20 and 34-35). McDaniels further testified that Rodriguez did not say he was going to fight or kill anybody and gave no indication he had a weapon. At the hearing on the Motion for New Trial, she testified Rodriguez's demeanor that night was "ready" because "[s]omething was about to go

---

[5] Petitioner provides no citations to the record in support of this ground for relief and attempts to use hearsay evidence about recent statements McDaniels allegedly made to a person named Phil Cunningham during a phone call. The proffered affidavit from Mr. Cunningham is inadmissible hearsay with respect to Petitioner's use of Cunningham's statements related to what he was allegedly told by McDaniel to prove the truth of the matter asserted in the affidavit. Fed. R. Evid. 801, 803; (D.E. 17-4). Notably, Petitioner fails to offer any affidavit from McDaniels herself, let alone one recanting her testimony as Petitioner alleges. (D.E. 17, Page 44).

down" but that "he was really calm." (D.E. 22-39, Pages 161-162). She again testified that when she asked him if he was leaving, he said "Nah, I got beef with someone inside." (D.E. 22-39, Page 162). She also again testified she did not see Rodriguez with a weapon that night but that when she heard shots fired, she thought it was Rodriguez shooting. (D.E. 22-39, Page 169). This testimony is not recanting testimony as characterized by Petitioner.[6]

As to Petitioner's grounds for relief related to alleged available testimony from Alex Sandoval and Sebastian Mejia, Petitioner has provided no sufficient evidence of what their alleged testimony would be. (D.E. 17, Pages 45-48). As with McDaniels, Petitioner relies solely on hearsay evidence contained in Cunningham's affidavit about what Mejia allegedly told him. Fed. R. Evid. 801 and 803. (D.E. 17-3). Petitioner provides no evidence at all in support of his allegations regarding what Sandoval's testimony would be. (D.E. 17, Page 45). Petitioner provides no affidavits from either witness or any other evidence. Therefore, while Petitioner alleges his trial counsel was ineffective for not bringing these witnesses before the jury, Petitioner has failed to sufficiently establish what their testimony would even be. He simply fails to support any of his allegations with any law or sufficient fact or evidence.

Finally, as to the alleged newly discovered witness Justin Cantu, Petitioner has provided an affidavit from him dated March 17, 2021 which provides that he knew Petitioner before the night in question, played pool with him that night and did not see

---

[6] Even if Petitioner had provided an affidavit from McDaniels recanting her previous testimony, such affidavits are viewed with "extreme suspicion" by the Fifth Circuit. *Summers v. Dretke,* 431 F.3d 861, 872 (5th Cir. 2005).

Petitioner with a gun. (D.E. 17-4, Page 1). Further, while he stated Petitioner "did not bum rush anyone on his way out of the bar," he also states he "was already outside of the bar when I heard gunshots." (D.E. 17-4, Page 1). Petitioner alleges Cantu's testimony would have established he was not the aggressor and that the failure of his counsel to call Cantu as a witness amounts to ineffective assistance of counsel. However, as discussed above, the evidence presented at Petitioner's trial, including the testimony of DeLeon and multiple other witnesses, was more than sufficient to support his conviction. *Norris v. Davis*, 826 F.3d 821, 835 (5th Cir. 2016) ("Norris cannot show *Strickland* prejudice in light of the overwhelming evidence of his guilt."); *Hoover v. Davis*, No. 4:19-0905, 2020 WL 1430498, at *9 (S.D. Tex. Mar. 23, 2020) (Petitioner failed to demonstrate his counsel's allegedly deficient performance caused him prejudice given the strong evidence of his culpability). There was evidence from multiple other witnesses sufficient for a reasonable jury to find that Petitioner murdered Rodriguez and assaulted Gonzalez and the undersigned recommends Cantu's proposed testimony, including that he was already outside of the bar when the fatal shots were fired, would not have changed the jury's guilty verdict.

Here, Petitioner is simply urging the Court to make witness credibility determinations and to weigh the evidence in his favor. *Jackson v. Virginia,* 443 U.S. 307 (1979) (The trier of fact has the responsibility of weighing the evidence, resolving conflicts in testimony, and drawing reasonable inferences from basic facts to ultimate facts). Further, "the assessment of the credibility of witnesses is generally beyond the scope of review." *Schlup,* 513 U.S. at 330. For the reasons stated above, the undersigned

recommends Petitioner's claims do not warrant federal habeas relief.

## VI. CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the Court of Appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although Petitioner has not yet filed a notice of appeal, it is respectfully recommended that this Court nonetheless address whether he would be entitled to a certificate of appealability ("COA"). A district court ruling on a petitioner's relief may *sua sponte* rule on a COA because it "is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court. Further briefing and argument on the very issues the court has just ruled on would be repetitious." *Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (per curiam).

A COA "may issue...only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). As to claims the Court rejects solely on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). As to claims the Court rejects solely on procedural grounds, the Petitioner must show both that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a

constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id*. (emphasis added).

In Petitioner's case, it is recommended Petitioner does not demonstrate these standards. If the District Judge orders that Petitioner's habeas petition be denied and Petitioner seeks a COA in order to proceed with his case, it is further recommended the COA be denied because he has not made the necessary showing for issuance.

## VII. RECOMMENDATION

Petitioner is not entitled to an evidentiary hearing on any of his claims which were rejected on the merits by the state courts, both on direct appeal and during his state habeas proceeding, as he has failed to allege facts entitling him to relief. For the reasons stated above, the undersigned respectfully **RECOMMENDS** Respondent's Motion for Summary Judgment be **GRANTED** and Petitioner's case be **DISMISSED**. (D.E. 23). The undersigned further **RECOMMENDS** the Court **DENY** a Certificate of Appealability.

ORDERED this 30th day of August, 2021.

Jason B. Libby
United States Magistrate Judge

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *Douglass v. United Servs. Auto Ass'n,* 79 F.3d 1415 (5th Cir. 1996) (en banc).